**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

IN RE:

       **SPIG INDUSTRY, LLC**
       **Debtor**

**Chapter 11**
**Case No. 15-70310**

---

**SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION**

**NON-MATERIAL MODIFICATION**

**SPIG INDUSTRY, LLC**
**DEBTOR**

**PROPONENT**

**March 4, 2016**

SPIG INDUSTRY, LLC ("Debtor" or "SPIG"), the debtor-in-possession herein, by counsel, proposes the following Amended Plan of Reorganization:

## ARTICLE I
## DEFINITIONS

The definitions and rules of construction set forth in §§ 101, 103 and 1101 of the Bankruptcy Code shall apply when the terms defined or construed therein are used in this Amended Plan. In addition, the following terms when used in this Amended Plan shall, except if the context otherwise requires, supplement those definitions and rules.

1.1    "Administrative Claim" shall mean (i) a claim for costs and expenses incurred through the Effective Date in connection with the administration of the Debtor's estate, including the formulation, confirmation and implementation of this Plan, allowable in accordance with § 503(b) and entitled to priority under § 507(a)(1) of the Bankruptcy Code, and (ii) all fees payable to the United States Trustee by the Debtor under 28 U.S.C. § 1930(a)(6).

1.2    "Allowed" shall mean with reference to any Claim that is (i) listed in the schedules filed by the Debtor and not listed as disputed, contingent or unliquidated and has not been objected to by the Reorganized Debtor (ii) set forth in a proper proof of claim that was filed with the Clerk of the Court on or before the Bar Date and to which no objection has been filed, or (iii), in the event of an objection, allowed pursuant to a Final Order of the Court.

1.3    "Available Funds" shall mean funds in the Liquidation Account which could be used to pay Allowed Claims.

2

1.4    "Bankruptcy Code" shall mean Chapter 11 of Title 11 of the United States Code.

1.5    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Western District of Virginia, Roanoke Division.

1.6    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

1.7    "Bar Date" shall mean, with respect to pre-petition claims, October 9, 2015, the date fixed by the Bankruptcy Court for filing proofs of claim or interests.

1.8    "Bar Date for Administrative Claims" shall mean, with respect to post-petition claims and pre-petition Claims under § 503(b)(9) of the Bankruptcy Code, the date fixed herein for filing Administrative Expense Claims.

1.9    "Business Day" shall mean any day on which commercial banks are required to be open for business in Roanoke, Virginia.

1.10    "Cash Distribution" shall mean payment in cash, draft, certified or cashier's checks or wire transfer, or other legal tender.

1.11    "Causes of Action" shall mean all causes of action, choses in action, third-party claims, counterclaims and cross-claims (including, without limitation, all claims and any avoidance, recovery, or subordination actions against insiders and/or any other entities brought pursuant to the Bankruptcy Code, Federal law or state law, in contract or in tort, including, without limitation those under §§ 510, 542, 543, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code or otherwise) of the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor, or after the Effective Date against any entity based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of

3

the     date     of     entry     of     the     Confirmation     Order.

1.12     "Chapter 11 Case" shall mean the above-captioned case of the

Debtor.

1.13     "Claim" shall mean a claim against the Debtor as defined in §

101(5) of the Bankruptcy Code, including, but not limited to, any and all claims

arising from the rejection of executory contracts and unexpired leases of the

Debtor.

1.14     "Committee" shall mean the official committee of unsecured

creditors appointed in the Chapter 11 Case pursuant to § 1102 of the Bankruptcy

Code.

1.15     "Confirmation Date" shall mean the date of the entry of the

Confirmation Order.

1.16     "Confirmation Order" shall mean the order entered by the

Bankruptcy Court confirming this Plan in accordance with the Bankruptcy Code.

1.17     "Contested Claim" shall mean any Claim or any portion of any

Claim as to which the Reorganized Debtor, or any other party in interest has filed

an objection in accordance with the Bankruptcy Code and the Bankruptcy Rules,

which objection has not been withdrawn or adjudicated pursuant to a Final

Order.

1.18     "Debtor" or "SPIG" shall mean SPIG Industry, LLC.

1.19     "Disclosure Statement" shall mean the Debtor's Proposed

Disclosure Statement approved by the Bankruptcy Court.

1.20     "Effective Date" shall mean the date set forth in the Confirmation

Order.

1.21     "Estate" shall mean the estate of the Debtor created by § 541 of the Bankruptcy Code upon the commencement of the Chapter 11 case.

1.22     "Final Order" shall mean an order that shall not have been reversed, stayed, modified or amended and the time to appeal from or to seek review of or rehearing on such order pursuant to Bankruptcy Rule 9023 shall have expired and which order shall have become final.

1.23     "General Unsecured Claim" shall mean any claim against the Debtor, for which there is no security interest, other than an Administrative Claim, Tax Claim or Priority Claim.

1.24(a)   "Grundy National Bank" shall mean that certain national bank whose principal place of business is in Grundy, Virginia and that is the Holder of a valid, uncontested, allowed, fully secured claim, Claim #10, against the Debtor in the approximate amount of $2,767,284.22 as of February 18, 2016, plus interest, late fees, expenses, attorney's fees, costs, etc.

1.24(b)   "GNB Settlement Agreement" shall mean that certain settlement agreement, the terms and conditions of which are expressly incorporated into this Plan by reference, made by and among the Debtor, certain guarantors, and Grundy National Bank, that resolves, pursuant to Bankruptcy Rule 9019 and § 1123 of the Bankruptcy Code, Grundy National Bank's secured claim as set forth in this Plan.

1.25     "Holder" shall mean any entity holding a Claim or Interest.

1.26     "Impaired" shall mean a Claim or Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

1.27     "Interests" shall mean all equity securities in the Debtor as

5

defined in § 101(16) of the Bankruptcy Code.

1.28   "Joshua Harman" shall mean that certain individual who is a member of the Debtor and the beneficiary of Judgment Proceeds.

1.29   "Jones Day" shall mean that certain Ohio general partnership law firm and Holder of a valid, uncontested, and allowed secured claim against the Debtor in the amount of $6,928,786.38.

1.30(a)   "Jones Day Settlement Agreement" shall mean that certain settlement agreement, the terms and conditions of which are expressly incorporated into this Plan by reference, dated November 6, 2015, by and between, among others, Jones Day and Debtor that resolves, pursuant to Bankruptcy Rule 9019 and § 1123 of the Bankruptcy Code, the Jones Day secured claim as set forth in this Plan.

1.30(b)   "Jones Day Deficiency" shall mean the amount due and owing to Jones Day pursuant to the Jones Day Settlement Agreement.

1.31   "Judgment Proceeds" shall mean certain funds to which Joshua Harman is entitled in connection with various *qui tam* actions brought by Joshua Harman in his individual capacity as a relator under applicable state and federal laws.

1.32   "Liquidation Account" shall mean the interest-bearing bank account established as of the Effective Date for depositing all funds available for distribution to Holders of Allowed Claims.

1.33   "Material Distribution" shall mean an amount that will result in a distribution to an unclassified or classified Claim, as applicable, in an amount equal to or in excess of five percent (5%) of such Allowed Claim.

6

1.34   "Operational Distributions" shall mean distributions to creditors generated by the operation of the Debtor's business.

1.35   "Operational Payment Benchmark" shall mean payments to General Unsecured Creditors in an amount sufficient to satisfy all Allowed General Unsecured Claims, in full.

1.36   "Plan" shall mean this Second Amended and Restated Plan of Reorganization in its present form and as it may be further amended or supplemented.

1.37   "Petition Date" shall mean March 16, 2015.

1.38   "Post Confirmation Debtor" shall mean the Reorganized Debtor upon and after the Effective Date pursuant to the terms and conditions of the Plan.

1.39   "Priority Claim" shall mean a claim entitled to priority of payment in accordance with § 507(a), (4), (5) and (7) of the Bankruptcy Code, but excluding Administrative Claims.

1.40   "Professional Person" shall mean persons, including attorneys and accountants for the Debtor, the Reorganized Debtor, counsel for the Committee, retained or to be compensated pursuant to §§ 327, 328, 330, 331, 503(b), 506(b) or 1103 of the Bankruptcy Code.

1.41   "Pro rata" shall mean, with respect to each creditor in a particular class, that proportion which its Allowed Claim in its particular class bears to the aggregate sum of all Allowed Claims in the same class once all Contested Claims in that class have become Ultimately Allowed Claims or have been disallowed.

1.42    "Reorganized Debtor" shall be SPIG Industry, LLC or its successor as the representative of the Estate pursuant to § 1123(a)(3) of the Bankruptcy Code as designated in accordance with Article V. of the Plan and as set forth in the Confirmation Order to carry out the provision of the Plan on behalf of the Debtor and the Estate.

1.43    "Tax Claim" shall mean any Allowed Claim that is entitled to priority under § 507(a)(8) of the Bankruptcy Code.

1.44    "Ultimately Allowed Claim" shall mean any Contested Claim that has become an Allowed Claim.

1.45    "Unimpaired" shall mean a Claim that is not impaired within the meaning of § 1124 of the Bankruptcy Code.

## ARTICLE II

### UNCLASSIFIED CLAIMS

Administrative Claims and Priority Tax Claims against the Debtor shall not be classified for purposes of voting on or receiving distributions under the Plan. All such Claims shall be treated separately as unclassified Claims on the terms set forth in Article III.

### CLASSIFICATION OF CLAIMS

The Claims against Debtor, to the extent allowed, are classified as set forth in Article II. The Claim is in any particular class designated herein only to the extent such Claim fits within the description of such class and is in such other and different class or classes to the extent that the remainder fits within the description of such other class or classes:

Class 1:    Other Priority Claims
Class 2:    Secured Claim of Grundy National Bank

8

Class 3:   Secured Claim of Jones Day
Class 4:   Claims of unsecured creditors
Class 5:   SPIG Membership Claim

## ARTICLE III
## PROVISIONS FOR TREATMENT OF CLAIMS

Unclassified Claims shall be treated in the manner set forth in this

Article III.

Administrative Claims.

Allowed Administrative Claims, to the extent not previously paid

during this case and except as otherwise provided herein, shall be paid in full, in

cash, as and when said claims are allowed and ordered paid by the Court either

on the Effective Date of the Plan or on such other date as ordered; provided,

however, that, except as otherwise provided herein, any Administrative Claim

incurred after the Petition Date by the Debtor shall be paid in cash and in full in

the ordinary course of business or as the holder of such claim might otherwise

agree.

**The Bar Date for Administrative Claims is as follows:**

**All applications for payment of Administrative Claims,**

**including Claims under § 503(b)(9) of the Bankruptcy Code and**

**claims of each Professional Person for fees and expenses incurred up**

**through and including the Confirmation Date must be filed with the**

**Bankruptcy Court on or before thirty (30) days from the Confirmation**

**Date.**

Pre-Petition Priority Tax Claims.

Tax Claims, if any, shall be paid in full, with statutory interest, as

9

soon as funds become available to the Reorganized Debtor, such that they are paid within five (5) years of the commencement of the case. If all of the priority claims are not paid in full upon confirmation of the Chapter 11 plan, they shall be paid by the Reorganized Debtor from the funds received by it from the operation of the business of the Reorganized Debtor.

Class 1: Priority Claims. This class shall consist of Allowed Priority Claims which are not Tax Claims. The Class 1 claims, if any, will be paid in full within three (3) years of the Effective Date, with payments from the Reorganized Debtor. To date, the Debtor does not know of any Class 3 claims, and reserves the right to object to any that are asserted.

Class 2: This claim shall consist of the Allowed, Fully Secured Claim of Grundy National Bank, Claim #10. The GNB Settlement Agreement, attached hereto as **Exhibit A**, (i) is incorporated herein by reference, (ii) is adopted and assumed by the Debtor in all respects pursuant to § 365 of the Bankruptcy Code, and (iii) sets out the repayment of the Allowed, Fully Secured Claim of Grundy National Bank, Claim #10. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019 and § 1123 of the Bankruptcy Code, of the GNB Settlement Agreement and shall confirm and bind the Debtor, the Reorganized Debtor, all creditors and all parties-in-interest to the finding that Grundy National Bank's Claim #10 is fully secured by valid, perfected, first priority security interests and liens that are senior to those of all other creditors and parties-in-interest in certain collateral, real estate and equipment, which are more particularly described in the supporting documents attached to Claim #10. Grundy National Bank shall retain its security interests

10

and liens in the collateral and all of its rights and remedies, as amended by the GNB Settlement Agreement, throughout the bankruptcy case, after confirmation of the Plan, after the Debtor or the Reorganized Debtor receives a discharge, and after the bankruptcy case is closed by the Bankruptcy Court. All of Grundy National Bank's security interests and liens in the collateral and all of its rights and remedies, as amended by the GNB Settlement Agreement, shall "ride through" bankruptcy and bind the collateral, the Debtor, the Reorganized Debtor, all guarantors, all creditors, and all parties-in-interest and shall not be subject to objection in the bankruptcy claims objection process or be subject to collateral attack.

Class 3: This claim shall consist of the Allowed Claim of Jones Day. The Jones Day Settlement Agreement, attached hereto as **Exhibit B**, (i) is incorporated herein by reference, (ii) is adopted and assumed by the Debtor in all respects pursuant to § 365 of the Bankruptcy Code, and (iii) sets out the repayment of the Allowed Claim of Jones Day. Consistent with the terms and conditions of the Jones Day Settlement Agreement, Jones Day shall waive and release any security interest in the property of the Debtor and have a Class 4 Claim for the Jones Day Deficiency. The Jones Day Deficiency shall be paid as set forth in Class 4. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019 and § 1123 of the Bankruptcy Code, of the Jones Day Settlement Agreement.

Class 4: This class shall consist of the Allowed Claims of General Unsecured Creditors. The Reorganized Debtor will pay to its General Unsecured Creditors their choice of either:

1.      15% of their Allowed Claim, without interest, payable 30 days following the Confirmation Date, or

2.      100% of their allowed claim without interest, payable on the earlier of:

a.      within sixty (60) days of actual receipt by Joshua Harman of the Judgment Proceeds;

b.      upon achievement of the Operational Payment Benchmark; and

c.      the fourth anniversary of the Confirmation Date.

Periodic payments shall commence to Class 4 Creditors (other than on the Jones Day Deficiency claim) as soon as the Debtor achieves an operational status sufficient to make a Material Distribution. Such payments shall be made when the Reorganized Debtor has accumulated sufficient funds to make a Material Distribution, as calculated pursuant to Article 5.11 of the Plan, on Allowed Claims of Class 4 Creditors (other than with respect to the Jones Day Deficiency claim).

With respect to the Jones Day Deficiency, consistent with the Jones Day Settlement Agreement, Jones Day shall be entitled to payment of the Jones Day Deficiency upon the earlier of (x) within sixty (60) days of actual receipt by Joshua Harman of the Judgment Proceeds, or (y) the fourth anniversary of the Confirmation Date, but solely to the extent that there are any amounts due and owing to Jones Day upon the occurrence of either (x) or (y).

Grundy National Bank filed an Allowed Unsecured Claim, Claim #11, in the amount of $1,001,849.30, and has received payment from a guarantor.

Class 5:  The equity holders will retain their ownership of the Reorganized Debtor. Joshua Harman and J. Chris Harman shall be the future

Managers of the Reorganized Debtor.

## ARTICLE IV
## CLAIMS IMPAIRED UNDER THE PLAN

Classes 2, 3, and 4 are impaired under the Plan. The Plan alters the legal, equitable, and/or contractual rights of these impaired classes of the Debtor.

## ARTICLE V
## MEANS OF EXECUTION OF THE PLAN

5.1   Vesting of Assets in the Post Confirmation Estate. On the Effective Date, all of the Debtor's assets, including, but not limited to, the Debtor's personal property, Causes of Action, proceeds from the Causes of Action, tax attributes, including the net operating losses, shall vest with the post confirmation Estate in the Reorganized Debtor, free and clear of all claims and interests except as set forth in this Plan and in the GNB Settlement Agreement. The Debtor hereby transfers into the post-confirmation Estate all of its Causes of Action, except all Causes of Action against Jones Day or Grundy National Bank which are hereby released and extinguished.

5.2   Issuance of Promissory Notes. The Reorganized Debtor will borrow a sum sufficient from Joshua Harman or a related entity to fund the 15% dividend payable on or before thirty (30) days following the Confirmation Date for those Class 4 creditors that elect that option.

5.3   Payment of Remaining Plan Obligations. The Reorganized Debtor shall utilize funding from its operations and/or the Judgment Proceeds to fund the balance of the Plan obligations. To the extent Judgment Proceeds are utilized to fund the Plan, such amounts shall be made available to the

Reorganized Debtor in the form of a loan from Joshua Harman.

5.4     Duties and Responsibilities of the Reorganized Debtor.   The Reorganized Debtor shall be responsible for administering the Post-Confirmation Estate.  The Post-Confirmation Estate does not include any Causes of Action or claims against Grundy National Bank or Jones Day. The Reorganized Debtor may exercise its authority, including the ability to settle or compromise, after consultation with the Committee, any claim or Cause of Action it may have, except any involving Grundy National Bank or Jones Day.  The Reorganized Debtor shall have the power, authority and the obligation, among other things, to: liquidate and administer the Post-Confirmation Estate;  after consultation with the Committee, object to Claims filed or scheduled in the Chapter 11 Case as the Reorganized Debtor deems appropriate, except the claims of Grundy National Bank and Jones Day; after consultation with the Committee, settle any dispute between a Holder and the Debtor; investigate Causes of Action belonging to the Estate for the benefit of Holders of Claims and Interests; after consultation with the Committee, initiate, prosecute and settle or compromise all Causes of Action belonging to the Debtor or the Estate for the benefit of Holders of Claims; retain and pay at normal and customary rates, on a monthly basis, Professionals in connection with the Reorganized Debtor's duties; execute on behalf of the Estate any contract or documents necessary or advisable to effectuate the terms of the Plan; prepare and submit to taxing authorities on behalf of the Debtor such information as may be required by the taxing authorities; and undertake such further actions as may be necessary, desirable, or incident to any of the foregoing. In the event the Reorganized Debtor makes a determination to take action or

position pursuant to the provisions contained herein that is contrary to the stated position of the Committee, the Committee shall have the right, upon notice and motion, to seek a ruling from the Bankruptcy Court with respect to the proposed action(s) or position of the Reorganized Debtor, except that the Committee shall not have the right to contest or object to the GNB Settlement Agreement, the Jones Day Settlement Agreement or the claims of Grundy National Bank or Jones Day. The Reorganized Debtor shall not be authorized to take the proposed action(s) pending a ruling from the Bankruptcy Court. All claims and Causes of Action the Debtor, the Estate, or the Reorganized Debtor may have against either Grundy National Bank or Jones Day are released and forever discharged and may not be pursued by anyone.

5.5    Creation of Liquidation Account. On the Effective Date, a Liquidation Account shall be created in the form of an interest bearing account to be held in a bank approved by the Office of the United States Trustee which shall provide the Reorganized Debtor as the signatory on the account. The Reorganized Debtor shall deposit in the Liquidation Account all funds received that are to be distributed pursuant to the terms of this Plan.

5.6    Anticipated Fees and Expenses. The Reorganized Debtor shall use the services of counsel of the Debtor for the purpose of providing legal services in connection with implementing the Plan, including resolving Claims, litigating Claims and Causes of Action, collecting accounts and performing routine administrative matters involved in winding up the affairs of the Debtor. The Committee shall continue to retain counsel for purpose of providing legal services in connection with, among other things, implementing the Plan and

prosecuting Causes of Action not commenced by the Reorganized Debtor. Professional persons shall provide monthly statements for post-confirmation professional services and expenses to the Reorganized Debtor or the Committee, as applicable. The Reorganized Debtor shall be authorized to pay said statements from the monies available in the Liquidation Account if no objection to same has been received by Reorganized Debtor within twenty (20) days of the date the statement was served. If an objection is received and is unresolved by the parties, the affected party may petition the Court for a determination regarding the fee request.   If only a portion of the fee request is the subject of objection, the Reorganized Debtor is authorized to pay the uncontested portion.

5.7     Anticipated Tax Consequences. The Debtor does not anticipate that there will be any income taxes owing. However, in the event taxes are payable as a result of the actions taken in consummating the Plan, those taxes and the fees and expenses connected with the preparation of same shall be treated as current obligations and shall be paid from funds available in the Liquidation Account in accordance with the Plan.

5.8     Monitoring Distributions. The Committee, creditors and all parties in interest shall have the right to monitor the collection, accounting, treatment and distribution of all proceeds by the Reorganized Debtor. The Reorganized Debtor  shall make available the books and records of the Debtor to the Committee, any creditor and party in interest at any reasonable time, but not so as to interfere with the Reorganized Debtor's business, upon at least forty-eight (48) hours written notice. Every six (6) months the Reorganized Debtor shall prepare a statement of (i) cash receipts and disbursements, and (ii) pending

and concluded litigation, and send such statement to any other party in interest requesting a copy.

5.9      Treatment of Contested Claims. **<u>Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of a Contested Claim until such Claim becomes an Allowed Claim.  In lieu of distributions under the Plan to Holders of Contested Claims, a reserve shall be established.  The Reorganized Debtor shall fund the reserve in accordance with the procedures as set forth herein.  At the time of each interim distribution, the Reorganized Debtor shall hold back from payment of a Contested Claim in reserve in the Liquidation Account the amount to be distributed to the Holders of Allowed Claims in that Class (assuming none of the Claims in that Class were Contested Claims), less the amount of such payments that are being paid at such time on account of any Allowed portion of such Contested Claim.</u>**

Upon allowance of a Claim, the Reorganized Debtor shall make all distributions  on account of such Contested Claim that has become an Allowed Claim. Such distributions shall be made pursuant to the provisions of the Plan governing the  applicable Class.  If any property, allocated to the reserve remains after all  objections to the applicable Contested Claims have been resolved, such remaining property shall be distributed as soon as practicable pursuant to the provisions of the Plan. The Claims of Grundy National Bank and Jones Day are allowed and may not be contested or objected to by anyone on any grounds.

5.10   Post-Confirmation Role of Committee.  The Committee shall

17

be in existence until such time as the Class 4 Claims are paid in full.   The Reorganized Debtor shall consult with the Committee in connection with the exercise of the Committee's duties. The Committee shall have the power, authority and right:   to object to the allowance of any Claim, other than those of Grundy National Bank or Jones Day, and to the payment of any Cash Distribution to any creditor, other than to Grundy National Bank or Jones Day, including a Holder of an Administrative Claim; to investigate and analyze Causes of Action belonging to the Estate for the benefit of Holders of Claims and Interests, except as to Grundy National Bank or Jones Day;  to initiate, prosecute and settle all Causes of Action belonging to the Debtor or the Estate, except as to Grundy National Bank or Jones Day, to the extent that the Reorganized Debtor will not commence an action after being advised in writing by the Committee that the prosecution of a cause of action is warranted; to review reports and related information prepared by the Reorganized Debtor; to review fee requests and to raise objections thereto; to consult with the Reorganized Debtor and to object to proposed actions of the Reorganized Debtor if the Committee believes such actions are not in the best interest of creditors; and after the Confirmation Date, to pay counsel from the Liquidation Account after allowance.

5.11 Calculation of determination of available cash to make a Material Distribution.   Article III of the Plan provides for the payment of 100% to unsecured creditors who do not take the initial distribution of 15% from the loan made by Joshua Harman. As set out in the Disclosure Statement, Joshua Harman is loaning additional cash to fund the Chapter 11 Plan of the Debtor and providing the cash to restart business operations, including the construction of a

galvanizing plant, terminal end unit and slitter plant, so there will be a construction period before full operations can begin.  As a result, it is unlikely there will be the possibility of any Operational Distribution until construction has been completed. Then, commencing on the first calendar quarter after operations are commenced and on a quarterly basis thereafter, the Reorganized Debtor will provide financial statements by the 15th of the month following the close of the quarter to the Committee.  In addition, it shall provide a cash flow projection of future operations including sales, cost of goods, debt service requirements, and other income and expenses.  Once the quarterly financial statements and bank statements show Available Cash in the amount of $1,000,000.00 then within thirty (30) days, the Debtor shall make a Material Distribution to the Class 4 claimants (other than the Jones Day Deficiency claim) unsecured creditors for that quarter.  Available Cash shall be defined as the sum of cash that is available for the payment of an Operational Distribution after reserving sufficient funds for all operational expenses, including funds for the completion of any construction. This analysis shall be repeated each quarter until the Operational Payment Benchmark or the fourth anniversary of the Confirmation Date, which ever shall first occur.

## ARTICLE VI
## RETENTION OF JURISDICTION

Until this case is closed, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, under the Bankruptcy Code or otherwise, including that necessary to ensure that the purpose and intent of this Plan is carried out and to hear and determine all Claims that could have been brought

before the entry of the Confirmation Order.  The Bankruptcy Court shall retain jurisdiction to hear and determine all claims against Debtor preserved by this Plan and to enforce all causes of action which may exist on behalf of Debtor.

The Bankruptcy Court shall further retain jurisdiction after the Confirmation Date for the purpose of determination of all questions and disputes regarding title to assets of the estate, and determination of all Causes of Action, controversies, disputes, or conflicts, whether or not subject to any pending action as of the confirmation date, between Debtor and any other party, including, but not limited to, any right of Debtor to recover assets pursuant to the provisions of the Bankruptcy Code.

Without limiting the foregoing, the Bankruptcy Court shall retain exclusive jurisdiction for the following additional purposes after the confirmation date:

(a)    to modify this Plan after confirmation pursuant to the Bankruptcy Rules and Title 11 of the Bankruptcy Code (subject to the limitations in Article VII below);

(b)    to assure the performance by the Reorganized Debtor of its obligations to make distributions under the Plan;

(c)    to interpret and enforce the terms and conditions of this Plan;

(d)    to enter such orders, including injunctions, as are necessary to enforce the title, rights, and powers of the Reorganized Debtor and to impose such limitations, restrictions, terms and conditions on such title, rights, and powers as the Bankruptcy Court may deem necessary;

(e)    to enter an order concluding and terminating this reorganization case;

(f)    to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the order of confirmation as may be necessary to carry out the purposes and intent of this Plan;

(g)    resolve any dispute arising out of or related to the interpretation, implementation, or enforcement of the GNB Settlement Agreement or transactions contemplated therein;

(h)    resolve any dispute arising out of or related to the interpretation, implementation, or enforcement of the Jones Day Settlement Agreement or transactions contemplated therein; and

(i)    to decide issues concerning federal or state taxes and withholding which arise in connection with the confirmation and consummation of this Plan.

## ARTICLE VII
## MODIFICATION OF THE PLAN

Debtor may propose amendments or modifications to the Plan any time prior to the date of confirmation. After the date of confirmation, Debtor may remedy any defects or omissions or reconcile any inconsistencies in the Plan or in the Final Order in such a manner as may be necessary to carry out the purposes and intent of the Plan so long as the interests of claimants are not materially and adversely affected. Any amendments or modifications to the Plan may not conflict with the GNB Settlement Agreement or the Jones Day Settlement Agreement and are subject to prior written approval by Grundy National Bank and its counsel, which approval shall not be unreasonably withheld or delayed.

## ARTICLE VIII
## POST-CONFIRMATION REPORTS AND FINAL ORDER

Pursuant to Bankruptcy Rule 2015 (a) (6), the Reorganized Debtor will file a report with the Court concerning the action taken by the estate and Reorganized Debtor and the progress made in the consummation of the Plan. The report will be filed within one hundred eighty (180) days after the Effective Date of the Plan, subject to Court approval.

Following the completion of those steps necessary to consummate and implement the Plan, the Reorganized Debtor will file an application for entry of a Final Decree closing the case, pursuant to Bankruptcy Code § 350 and Bankruptcy Rules 2015 (a) (7), 3022 and 5009.

## ARTICLE IX
## EXECUTORY CONTRACTS

All executory contracts and unexpired leases not otherwise rejected prior to the Effective Date shall be assumed as of the Effective Date. A list of contracts and leases to be rejected pursuant to the terms of the Plan shall be filed and served not later than five (5) days prior to the hearing on confirmation of the Plan. If the rejection of an executory contract or unexpired lease results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not previously evidenced by a filed proof of Claim or barred by a Final Order, shall be forever barred and shall not be enforceable against the Debtor or its properties or agents, successors, or assigns, unless a proof of Claim relating thereto is filed with the Bankruptcy Court within thirty (30) days after the Confirmation Date, or within such other period as may be ordered by the

Bankruptcy Court.

## ARTICLE X

## DISCHARGE OF DEBTOR

The Debtor shall receive a discharge under the provisions of § 1141(d)(1) of the Bankruptcy Code.  Confirmation of the Plan releases any and all claims against the Debtor and its properties to the extent permitted by § 1141 of the Bankruptcy Code and the provisions of the Plan bind the Debtor, all creditors and equity holders whether or not such Claim or Interest is impaired and whether or not the holder of such Claim or Interest accepted the Plan. However, neither confirmation of the Plan nor the Debtor's discharge shall discharge the Debtor, the Reorganized Debtor, or anyone else from it or their obligations under the GNB Settlement Agreement or the Jones Day Settlement Agreement. The GNB Settlement Agreement and the Jones Day Settlement Agreement shall "ride through" bankruptcy and remain as obligations of the Estate, the Debtor and the Reorganized Debtor.

## ARTICLE XI

## GOVERNING LAW

Unless an applicable rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or the Virginia corporation laws, the internal laws of Virginia shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan or this case, except as may otherwise be provided in such agreements, documents, and instruments.

Date:        March 4, 2016

Respectfully submitted,

**Debtor SPIG INDUSTRY, LLC**


By: /s/Christopher Harman
    Christopher Harman
    Managing Member


/s/Robert T. Copeland
Robert T. Copeland, VSB #14575
**COPELAND LAW FIRM, P.C.**
P.O. Box 1296
Abingdon, VA 24212
(276) 628-9525
(276) 628-4711 (fax)
Counsel for Debtor